## Farley, et al. v. Stacey, et al.

(Decided October 12, 1917.)

### Appeal from Pike Circuit Court.

1. Husband and Wife—Married Women—Conveyances.—A married woman cannot, by deed, convey her lands, unless her husband joins in the deed, or has theretofore, by a separate deed, conveyed his interest in the lands. Her attempt to convey otherwise is void.

2. Contracts—Action by Son to Recover for Services Rendered Father and Mother—Parent and Child.—A son residing with his father and mother, as a member of the family, cannot recover for services rendered them, unless an express contract is shown, by which he is to receive compensation for his services.

3. Vendor and Purchaser—Improvements—Liens.—When a married woman conveys her lands by deed, in which her husband does not join, and is therefore adjudged to be void, as against the woman or her heirs, the vendee is entitled to a lien upon the lands to secure the payment to him of the enhanced vendible value, which the improvements he has placed upon the lands have added to it, not in excess of the cost of the improvements, provided, he in good faith believed his title to the lands was good, and has performed his contract, if the performance of a contract was the consideration for the void conveyance.

4. Descent and Distribution—Advancements.—The excess of advancements made to one heir over the others is not a debt, which

he owes to the other heirs, and an advancement is to be esti-
mated at its value at the time when the advancement is made,
unless the advancement is made to be enjoyed at a future time,
when the value is to be estimated as of the time when the gift
is made complete by the possession and enjoyment of the prop-
erty.

W. K. STEELE and J. S. CLINE for appellants.

W. G. W. RIDDLE and ROSCOE VANOVER for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming
upon original appeal and reversing on cross-appeal.

G. T. Farley and his wife, Lucy Farley, were the par-
ents of ten children, who survived them. The names of
these children were Jane Stacey, Della Runyon, Vicey
Farley, Mary Edwards, Anderson Farley, Cleveland
Farley, Lewis Farley, Harrison Farley, Sarah Ann Al-
ley, and Boyd Farley. Lucy Farley died intestate on the
27th day of March, 1906. The husband and father, G.
T. Farley, died on the 14th day of September, 1912,
testate. The latter, after the death of his wife, Lucy
Farley, married a second time, in 1909. Previous to his
death he made advancements to all of his children, ex-
cept to Jane Stacey, Cleveland Farley and Mary Ed-
wards. To Vicey, Anderson, Lewis, Boyd and Harrison
he conveyed lands, the titles to which were in him, and
as a part of the consideration for these conveyances
the sons were required to pay to Della Runyon and Sarah
Ann Alley, each, the sum of three hundred dollars. By
his last will and testament, he devised all of his property
of every kind to his surviving widow, except one hundred
dollars, which Vicey owed him for lands conveyed to her,
and which he devised to Jane Stacey. He then devised
one dollar, each, to his other nine surviving children.
Lucy Farley, the mother, was the owner in her own right
of a farm consisting of about one hundred and eighty-two
acres, which had been conveyed to her by her father, and
upon this farm she and her husband had lived for many
years and where they had reared all their children. G.
T. Farley and Lucy Farley were married long prior to
the year, 1894, and it seems that Lucy was the owner
of this farm prior to that time. Prior to the 24th day
of February, 1906, all of the children had married and
had moved from the family domicile, except Vicey, Mary
and Cleveland. Cleveland was then twenty years of age,
but had become married. On that day Lucy Farley ex-

ecuted a deed, by which she attempted to convey the farm owned by her to Cleveland Farley, in consideration of his payment to his sister, Mary Edwards, the sum of three hundred dollars, fifty dollars of which was to be paid on February 24, 1908, and the same amount in each year thereafter until the whole amount was paid. By the terms of the deed, she, also, reserved a maintenance for her lifetime from the farm, and a home upon the farm for her unmarried daughters, Vicey and Mary, so long as they should remain unmarried, and a home upon the land for her husband, G. T. Farley, during his lifetime. Lucy was at that time sixty-five years of age and in a feeble state of health. G. T. Farley was about the same age. Lucy died thereafter on the 27th day of March. About two years thereafter, Mary married and moved away from the property and never returned to it. Shortly after Mary's marriage, Vicey went away of her own accord and did not return. While Mary and Vicey were living there after the death of their mother, they and Cleveland and the father, all together, worked the farm and together with Cleveland's wife lived as a family, as they had always done theretofore. Presumably these girls did their share of the work in the housekeeping, as well as working in the crops. When his daughters were gone, G. T. Farley married a second time. This seems to have caused an estrangement between him and his son, Cleveland, which resulted in the son suing the father for a flock of sheep, which he claimed his father and mother had given him, and a rupture between them as to their respective rights in the farm. For about one year the father and son occupied different portions of the dwelling house and ceased to live as one family. As a settlement of their dispute as to their respective rights in the farm they entered into an agreement, by which the farm was divided and the father held one portion of it as his curtesy in the land, and Cleveland had undisputed possession and control of the other portion until the death of the father, on September 14, 1916, when Cleveland took possession and control of the entire farm and so held it until he sold and conveyed to George Stanley a portion of it, to Boyd Farley a portion of it, and the remaining portions to Dr. J. B. Maynard and to his sister, Mary Edwards, nee Farley,. The portion sold to Mary Edwards was about two or two and a half acres, and before the sale was made, Cleveland paid to her the three hundred dollars, which was a part of the consideration for the

conveyance of the land to him by his mother. Although Lucy Farley was a married woman at the time she made the deed to Cleveland, by which she attempted to convey the land to him, her husband did not join in the deed with her, as one of those executing the conveyance, and had not theretofore by a separate deed conveyed his interest in the land. About the time that Cleveland and his father made the division of the lands between them, Cleveland procured the advice of a lawyer as to the validity of the deed under which he claimed the land and was advised that the deed was not valid. In spite of this information, however, he erected three dwelling houses upon the land, the erection of one of which, he states, cost him the sum of nine hundred dollars, and which, together with about three-fourths of an acre of land, he sold and conveyed to Dr. J. B. Maynard for a sum between eleven hundred and twelve hundred dollars. For the portion of the land sold and conveyed by him to Mary Edwards he received one hundred and seventy-five dollars, and she has since sold this piece of land for three hundred and fifty dollars to one of her brothers. A portion of the land he sold and conveyed to George Stanley for a consideration of two thousand dollars, and the remainder to Boyd Farley for twelve hundred dollars. It, also, appears that Cleveland sold timber trees from the land, which, after payment of the expenses, netted him the sum of three hundred and seventy-six dollars, and he paid the taxes upon the land from 1906, until he sold the property, amounting in all to one hundred and eighty-six dollars. He, also, sold a right of way over the lands to the Williamson & Pond Creek Railway Company for a consideration of eight hundred dollars, and it seems that the railway company had, before the institution of this suit, placed its road over the right of way.

This suit was instituted by Jane Stacey, Della Runyon, Vicey Farley, Mary Edwards and Anderson Farley against Cleveland Farley, Lewis Farley, Boyd Farley, Harrison Farley, Sarah Ann Alley, George Stanley and the Williamson & Pond Creek Railway Company, and by which the plaintiffs sought a judgment of the court declaring the deed from Lucy Farley to Cleveland Farley to be void, and a division of the lands, and an allotment to each of the plaintiffs, in severalty, one-tenth of the land, and the recovery from the railway company of one-tenth of the value of the right of way for each of the plaintiffs.

The railroad company answered and alleged that it had purchased a right of way over the lands from Cleveland Farley, who was claiming to be the owner of the land, for the consideration of eight hundred dollars, but having learned that the title to the land was in controversy, it had refused to pay the consideration or to accept a deed from him, but was ready to pay the consideration to whomsoever the court should adjudge was entitled to it, upon the making of a proper conveyance to it of the right of way.

Cleveland Farley, George Stanley and Boyd Farley, each, filed separate answers, in which they denied that the deed from Lucy Farley to Cleveland Farley was invalid. They further affirmatively plead that it was agreed between Lucy Farley and her husband, G. T. Farley, that the father should make advancements out of his estate to the seven older children, and that Lucy should make advancements out of her estate to the three younger, one of whom died, leaving but two unprovided for, Cleveland and Mary Edwards, and that the lands owned by G. T. Farley were purchased by the proceeds of the sale of timber trees and mineral rights upon the lands owned by Lucy Farley, and that they were the joint owners of the land to which the husband held title, and that in consideration of this agreement, they advanced to Della Runyon three hundred dollars in money; to Vicey Farley, lands of the value of three thousand and three hundred dollars; to Anderson Farley, lands of the value of two thousand dollars; to Mary Edwards, three hundred dollars, in money; to Lewis Farley, lands of the value of two thousand dollars; to Harrison Farley, lands of. the value of fifteen hundred dollars; to Sarah Ann Alley, three hundred dollars in money; and to Jane Stacey, two hundred and seventy-five dollars in money; and that the sum advanced to each of them was in excess of the value of the advancement to Cleveland; that Cleveland, believing in good faith that he had a good title to the land under the deed from his mother, had in good faith put lasting improvements upon the land in the way of buildings, clearing of lands, fencing and digging a well, which had increased the vendible value of the lands to the amount of two thousand dollars; that Cleveland, under the terms of the deed, had supported and maintained his father and mother, and performed services for them of the value of five thousand dollars, and prayed, that in the event the deed from his mother should

be held invalid to equalize the advancements; and to adjudge him a lien upon the land for the value of the improvements placed upon it by him, and for the value of his services in supporting and maintaining his father and mother. They, also, denied that the lands could be divided without materially impairing the value of each portion. Issue was joined upon all of the averments of the answers. Pending the litigation all of the heirs of Lucy Farley, except Della Runyon and Jane Stacey, for a nominal consideration expressed in the deed, quit claimed all their respective interests in the lands, in controversy, to Cleveland Farley. The cause having been submitted upon the pleadings and proof, the court adjudged that the deed from Lucy Farley to Cleveland Farley was void and did not pass title to him, and that by inheritance from his mother and the conveyances to him by his brothers and sisters, his vendees were the owners of eight-tenths of the land, and that Jane Stacey and Della Runyon were each the owners of one-tenth of the lands, and that the lands should be divided between them in accordance with their interests; that the portions of the lands upon which Cleveland Farley or his vendees had placed improvements should be allotted to Cleveland and his vendees, without taking into consideration the value of the improvements or the value which the improvements added to the vendible value of the lands, but otherwise the lands should be divided, giving to Cleveland eight-tenths thereof and to Della Runyon and Jane Stacey, each, one-tenth thereof according to quantity, quality and value of the lands. The other claims of the defendants and the claim of Jane Stacey and Della Runyon to one-tenth, each, of the purchase price of the railroad right of way were denied.

From the judgment Cleveland Farley, Boyd Farley, and his wife, Rosetta Farley, George Stanley and his wife, Martha Stanley, have appealed, and from that portion of the judgment, which denied to Jane Stacey and Della Runyon one-tenth, each, of the price of the railroad right of way, they have appealed.

(a). At the time Lucy Farley made the deed under which appellants claim title, she was a married woman. The name of her husband, G. T. Farley, does not appear in the caption, granting clause, nor in any other place in the deed. He, however, subscribed the deed after it had been signed by Lucy Farley and acknowledged it. The land was such property as was formerly denominated the

general estate of the wife. To make a conveyance by a *feme covert* of her lands valid, it is necessary that it shall be done in the manner provided by section 506, Kentucky Statutes, which provides that the conveyance may be by the joint deed of husband and wife, or by separate deeds, but in the latter event the "husband must first convey or have theretofore conveyed." It has been held that the deed of a married woman in which the husband does not join is void, and the fact that the husband signs and acknowledges a deed, in the body of which his name does not appear, is not sufficient. Brady v. Gray, 17 R. 512; Weber v. Tanner, 23 R. 1107; Simpson v. Smith, 142 Ky. 608; Mays v. Pelly, 125 S. W. 713; Elliott, &c., v. Scoville, &c., 144 Ky. 584; Stave Co. v. Page, 125 S. W. 172; Hellard v. Rockcastle Mining Co., 153 Ky. 259; Hatcher v. Andrews, 5 Bush 561; Beverly v. Waller, 115 Ky. 600; Newly v. Cox, 81 Ky. 58; Daniels v. France, 168 Ky. 749. The deed being absolutely void, is the same as if the deed had not been made and did not pass any title to the appellant, Cleveland Farley, and the court did not err in so adjudging.

(b). Touching the contention of appellants, that the vendee in the void deed is entitled to have a lien upon the land to secure the payment of five thousand dollars or any other amount claimed for services rendered in maintaining and caring for his father and mother is not tenable. He occupied the position of a son in the same household with his father and mother, and the evidence does not disclose any express contract, by which he was to be compensated for anything done for his father, and no implied contract is raised from the circumstances. Bishop v. Newman's Ex'tr, 168 Ky. 238; Price v. Price's Ex'tr, 101 Ky. 28; Newton's Ex'tr v. Field, 17 R. 769; Perry v. Perry, 2 Duvall 312; Frailey's Admr. v. Thompson, 20 R. 1179; Heck v. Heck, 10 R. 281; Reynolds' Admr. v. Reynolds, 92 Ky. 556; Conway v. Conway, 130 Ky. 221; Bolling v. Bolling, 146 Ky. 316; Turner v. Young, 155 Ky. 607. While the deed reserves a home upon the land for the father during his lifetime, it does not contain any stipulation requiring the appellant to maintain the father, and if a claim could be made for the maintenance of the father, it would necessarily be against the father's estate and not that of the mother. Cleveland was a minor son at the time of his mother's death, and the parents were entitled to his services until his majority. By a reservation in the deed the mother

retained a right to a maintenance from the lands during her life, and if this is construed to be a requirement that the appellant should maintain her as a part of the consideration to be paid for the land, the burden imposed by it upon the land ceased at the end of one month, as she then died, and there is no evidence that Cleveland rendered her any services after the making of the deed and before her death. After the death of the mother, the father and appellant, Cleveland, lived as members of the same family until the father's second marriage, after which time the proof shows abundantly that the appellant did not render him any kind of assistance. The claim that he furnished his father a portion of the land to live upon and where he maintained himself is not tenable, because the father had the right to have held all the land from the death of the mother until his death as a tenant by the curtesy.

(c). It is insisted that the judgment ought to be reversed, because the court did not adjudge that appellant, Cleveland Farley, had a lien upon all the land to secure the payment to him of the amount of the increased vendible value of the land created by the lasting improvements put upon the land by him. It is insisted that the rule, that a married woman, who makes a deed in which her husband does not join, and for that reason the deed is void, and she can recover the land conveyed away by her, that she will not be permitted to do so, except upon terms, which will be equitable to both parties, should be applied to this case, as the appellees, who seek to annul the deed and recover the land, are the successors of the maker of the deed, and should not be in a more advantageous position than the vendor from whom they inherited the land. There are several limitations upon this rule and one is, that the vendee must be in good faith and believe that the property upon which he makes the improvements are his own. Barlow v. Bell, 1 A. K. M. 246. Another limitation is, that the vendee can only recover to the extent that the improvements enhance the vendible value of the property, not in excess of the value of the improvements, and if the improvements do not add to the vendible value of the property, he cannot recover anything for them, but may remove them, if he can do so practically. Another limitation is, that he must perform his contract, if the performance of a contract is the consideration. Pulliam v. Jennings, 5 Bush 433; Robards v. Robards, 27 R. 494; Poole v.

Johnson, 31 R. 168; Bell v. Blair, 28 R. 614; Thomas v. Thomas, 16 B. M. 421. It appears from the evidence that appellant, Cleveland Farley, before he made any improvements upon the lands, which could add to the vendible value of the property, had information that the deed under which he claimed was invalid, and he thus could not in good faith have had a conviction that the land was his own and not that of the heirs of his mother. Aside from this consideration, however, the judgment of the court, of which he complains, directs, that the lands be so divided as to allot to his vendees all the lands upon which either he or they have placed any valuable improvements, and in doing so will value the land for the purposes of the allotment, as though the improvements had never been made, and under this judgment he will receive the entire benefits of the improvements. While the appellees might complain of that portion of the judgment they are not doing so. It does not appear that the improvements will add anything to the vendible value of the lands, which will be allotted to the appellees. The appellant did not seek to recover the part of the consideration which he paid to his sister, Mary Edwards, and she abandoned her attempt to recover any part of the land by quit claiming her interest therein to him.

(d). The appellants complain that the court was in error in failing to charge the appellees with advancements in the sum of three hundred dollars and two hundred and seventy-five dollars, respectively, and adjudging that they were not entitled to any interest in the land until appellant, Cleveland Farley, was made equal to them out of the proceeds of a sale of the lands. The proof is not satisfactory that Jane Stacey received anything from her mother's estate, in the way of an advancement, and with which she should be charged, other than two small calves, the value of which is not shown by the evidence, and could not have been more than a few dollars. Della Runyon received nothing in the way of an advancement from her mother's estate. As a part of the consideration for the lands, which their father conveyed to them, two of the sons were required to pay to Della Runyon one hundred dollars and two hundred dollars, respectively. By his will, the father devised one hundred dollars to Jane Stacey, which was a part of the consideration which Vicey Farley was to pay her father for the lands conveyed to her. The father did not have any estate undevised to be distributed among his heirs,

out of which the children to whom he gave nothing could be equalized with the others. The excess of advancements received by one heir is not a debt which he owes to the other heirs. Eckler v. Galbraith, 12 Bush 71. The lands in controversy and sought to be divided were not the estate of the father, but that of the mother. It seems to be conceded that the conveyances of lands by the father to his older sons and daughters were advancements made to them out of his estate, but the evidence is very unsatisfactory as to their value, and the values stated seem to be those at the institution of the suit, instead of their value at the time they were made. Section 1407, Kentucky Statutes. The rule is, that advancements are to be estimated at their value when made, unless they are given to be enjoyed at a future time, when the value is to be estimated as of the time when the gift is made complete by the possession and enjoyment of the property. Hook v. Hook, 13 B. M. 528; Stevenson, &c., v. Martin, &c., 11 Bush 485; Ward, &c., v. Johnson, &c., 124 Ky. 1. The advancements to Della Runyon were three hundred dollars to be paid to her in money, and the devise to Jane Stacey with which she would be charged in the settlement of her father's estate was one hundred dollars. Without deciding whether, under the facts of this case, the appellees are to be charged with these advancements before enjoying any part of their mother's estate, it appears that the action of seven of the mother's heirs in quit claiming their interests in their mother's land to appellant, Cleveland, had the effect of perfecting the attempted advancement made by the mother to seven-tenths of the land at the date of the void deed of the mother. The only evidence as to the value of the land at that time is the statement, that the father listed it for taxation at from seven hundred to seven hundred and fifty dollars, which all know, from common experience, to be a very unsatisfactory criterion by which to estimate values. There is evidence to the effect that lands have doubled in value in that vicinity since 1906. The increase in vendible value added by the improvements put upon the lands by appellant is estimated from five hundred to two thousand dollars, but may be safely fixed at fifteen hundred dollars. The value of the lands, as appears from prices realized at the present time, is three thousand five hundred and twenty-five dollars. Without considering the reduction in value caused by appellants cutting and selling timber from the

lands, the above estimates would fix a value for the lands in 1906 at more than one thousand dollars, which would make the advancement to Cleveland at that time of the value of over seven hundred dollars, burdened with the payment of three hundred dollars to Mary Edwards. Estimating the value of the lands at the time of the termination of the father's curtesy in it, the value of the advancement would be very much greater. Hence, it appears that the value of the attempted advancement made to Cleveland by his mother and perfected by his brothers and sisters is equal to that received by Della Runyon from her father, and in excess of that received by Jane Stacey, and he inherits the same estate from his mother as each of them do, and it seems that he abandoned his claim for relief against his brothers and sisters, other than appellees, on account of alleged advancements, as they were not seeking to recover any of the lands, in controversy.

(e). There are no facts in evidence, which tend to show that the lands cannot be divided, as ordered by the court, without materially impairing the value of it or any of the portions.

(f). The complaint of the appellants, that the court erred in refusing, when the deed was adjudged to be void, to adjudge that Cleveland Farley should have a lien upon the land to secure the payment of the taxes, which he had paid upon it, amounting, since 1906, to the sum of one hundred and eighty-six dollars, is not meritorious. The proof shows that the rent of the lands was of the value of at least fifty dollars a year and that appellant, Cleveland Farley, had had unrestricted control of a large part of the lands since 1909, and all of it since the death of his father, in September, 1912, and in addition had cut and sold timber from the lands, for which he received, after the payment of the expenses, three hundred and seventy-six dollars, and the judgment does not charge him with either the rents or the value of the timber.

(g). The appellees complain that they are denied any portion of the purchase money due from the railroad company for the right of way, and it seems that this complaint is just, if, when a division of the lands is had in accordance with the judgment of the court, any portion of the right of way shall be situated on the portion of the lands allotted to the appellees. The judgment should have directed the commissioners, in estimating the value of the lands for division, that it should be done

without considering the fact of the burden placed upon it by the right of way, but to ascertain the entire length of the right of way upon the lands as a whole, and the length of that portion of the right of way, which may be upon the portions allotted to the appellees, respectively, and then upon confirmation of the report the appellees should be adjudged to receive the proportional part of the purchase money of the right of way due each of them, and require them to vest the railroad company with a proper title to the right of way upon each of their portions, and for the sole reason that the court failed to so adjudge in regard to the purchase money of the right of way, the judgment is reversed upon the cross-appeal.

It is therefore ordered that the judgment be affirmed upon the original appeal and reversed upon the cross-appeal, and remanded for proceedings consistent with this opinion.