### WARE v. SHARTLE.

Common Pleas Court, Franklin County.

No. 172311. Decided December 28, 1948.

McGhee, Rowe & Evans, J. F. Cianflona, Columbus, for plaintiff.

Bruce G. Lynn and Thomas A. Boulger, Columbus, for defendant.

## OPINION

By LEACH, J.

This is an action to set aside a deed from Prescott B. Ware to D. Lester Shartle, dated December 5, 1945.

In the absence of any allegation or proof of fraud or that Bertha E. Ware did not during her lifetime provide a home and the necessities of life to Prescott B. Ware, the claim of failure of consideration for the deed from Prescott B. Ware, to his daughter by reason of the death of Bertha E. Ware, there being no forfeiture clause in said deed, cannot prevail. This is conclusively established by the case of **City of Cleveland v. Herron, 102 Oh St 218**, on page **224, 131 N. E. 489, 491**, the applicable rule being stated: "It seems quite well settled that mere failure of consideration, whether partial or total, when unmingled with fraud or bad faith, is not sufficient in equity to warrant the rescission of an executed contract; and, further, that in the absence of fraud a deed for real estate will not be set aside as for a failure of consideration on the sole ground that the promises and agreements which entered into its execution, and which were to be performed in the future, have not been performed. So equity will not interfere ordinarily where a grantor has seen fit to accept a promise on the part of his grantee for the performance of certain acts, without specifically providing that failure to perform shall be a condition of forfeiture, or in some way affect the validity of the deed, or entitle him to a reconveyance." This is the rule adopted by the Ohio Supreme Court.

Outside of Ohio there seems to be a conflict of authority: Lucas v. Lucas, 171 Ga. 806, 156 S. E. 680; Cree v. Sherfy, 138 Ind. 354, 37 N. E. 787; Maddox v. Maddox, 135 Ky. 403, 122 S. W. 201; and Beard v. Beard, 200 Ky. 4, 254 S. W. 430, cited in plaintiff's brief, are apparently contra. In accord, however, are the cases of Flanagan v. Flanagan, 133 Md. 332, 105 A. 299; Calkins v. Calkins, 220 Ill. 111,. 77 N. E. 102; Knight v. Jones, 93 S. C. 376, 76 S. E. 978, and House v. House, 191 Ga. 678, 13 S. E. 2d 817.

It is to be noted that, apparently to insure against failure of consideration of said deed in case of her death, the grantee therein, Bertha B. Ware, by will devised to her father Prescott B. Ware "all real estate owned by me at the time of my decease, he to have and to hold all such real estate absolutely and in fee simple forever."

Plaintiff further contends that the deed from Prescott B. Ware to D. Lester Shartle recites that it was for a valuable consideration, and cites **Burrage's Lessee v. Beardsley, 16 Ohio 438,** as follows:

"Where a deed purports to be executed for a valuable consideration, and is impeached by proving that no such consideration passed, it cannot be sustained by proving that it was executed in consideration of natural love and affection."

However, reference to the deed sought to be set aside shows that the consideration stated in said deed was "one dollar and other **good** and valuable consideration." So, it is apparent that the expressed consideration was not "valuable consideration" alone, but also "good" consideration.

Moreover, as stated at page 665 of the opinion in **Brown v. Whaley, 58 Oh St 654,** 49 N. E. 479, 480, "The great weight of authority is that, as between the parties, a gift or voluntary conveyance is valid, and can only be questioned by creditors; and by the recognition given by the general assembly to deeds of gift, and the decision in **Thompson v. Thompson, 17 Oh St 649,** the question as to their validity seems to be fully settled in this state."

As to the claim that Prescott B. Ware was, at the time he executed the deed in question, mentally incompetent, there is a conflict in the evidence. What constitutes sufficient mental capacity to make a deed is well stated in **Monroe v. Shrivers, 29 Oh Ap 109,** at page 112, 162 N. E. 780, 781, of the opinion:

"It may be further stated that the same rules as to mental capacity that apply to wills apply also to deeds and other written instruments, and, where the grantor has sufficient intellect to understand in a general way the nature and effect and immediate consequences of a transaction, and consents to it, such is valid and binding and cannot be set aside for lack of mentality. * * *

"As a rule as to mental capacity to make a lease, deed, or other written instrument, it may be stated in a general way that senility, eccentricity, or even partial impairment of the mental faculties, is not necessarily sufficient to incapacitate the grantor if he has sufficient mental capacity to comprehend the nature of the transaction and to protect his own interest."

The execution of said deed, it is manifest from the evidence, was not upon sudden impulse but the result of an intention long held to by the grantor. Over a period of years he had felt that the grantee was more like a son to him than his own son, the plaintiff; between whom and the grantor friendly relations had not for a long time existed.

It was shown that the grantor was somewhat eccentric, and several isolated manifestations of a hot temper, over the years of his past life, were disclosed by the evidence.

Also a psychiatrist who sat in on a hearing of an application for the appointment of a guardian for the grantor on April 8, 1947, which was a year and four months after the date of the deed in question, and whose only opportunity for observation was listening to the testimony of the grantor for one or two hours together with a short conversation with him in the court chambers, he never otherwise having had any contact or acquaintance with the grantor, expressed the opinion that Prescott B. Ware was mentally ill, and that he he had been for a good many years.

As against this, his family physician who had since 1934 seen him every three to five weeks, stated the grantor's memory was good, his conversation continuous, and that in his opinion the grantor was of sound mind and capable of performing ordinary business transactions and of disposing of his property by deed.

His neighbors, Robert Tallant, Edith Tallant, Walter Pfeiffer, Stewart McNaughton, Arthur Chaney, and Mrs. Arthur Chaney, all of whom knew and frequently saw the grantor, were all clearly of the opinion that Prescott B. Ware was of sound mind in 1945 and mentally capable of transacting ordinary business and to form a purpose to dispose of his property by

deed. Samuel L. Black, an attorney at law and a neighbor since 1925, and who saw and talked with Ware frequently since 1925, stated that he had a remarkable memory; that "he would certainly say his mind was sound," and that "he was perfectly capable of transacting ordinary business and to form purpose of disposing of his property by deed."

James H. Nissley, Office Manager of the Western Union Telegraph, who knew Prescott B. Ware over a considerable number of years and handled some of his business for him, was of the same opinion. So also was W. O. Randall, an attorney, and witness to the deed, who before its execution reviewed with the grantor, in detail, the grantor's purpose, and the effect of said deed and all of its ramifications. The Court cannot say that the evidence of mental incompetency is clear and convincing or even preponderates over the evidence that the grantor was mentally competent at the time of making the deed. There is no evidence of undue influence. While by the making of this deed the plaintiff, son of the grantor, was disinherited, "The mere disinheriting of one of testator's children is not an act, which, standing alone, may be considered by the jury as indicating any unsoundness of mind or inability on the part of the testator to make a will." **Syl. 1, Frye v. Frye, 17 Oh Ap 246.** The Court quotes with approval from editorial notes found in 13 Ann. Cases, 1044, as follows: "Though it has been held that the disinheritance of the testator's children is prima facie an unnatural and unreasonable act * * * it seems from the decisions cited under the general rule that in the absence of facts indicating a want of motive for a particular disposition, it cannot be said that such disposition is unnatural or unjust. For the purpose of determining whether the disposition is in fact unnatural or unjust, the relation which existed between the testator on the one hand and the persons disinherited and the legatees on the other should be considered."

The grantor's motive clearly appears from the record and it is further apparent that the grantor in making the deed had clearly in mind the relations which existed between himself, the grantor, on the one hand, and the person, his son, so disinherited, and his grantee on the other, and in view thereof, made the deed in question.

Finding the judgment, on the issues joined, for defendant; petition dismissed, at plaintiff's costs. Exceptions.

Motion for new trial, if desired, may be filed and overruled with exceptions.