Ollie GABBARD, et al., Appellants,

v.

Pleas TRUETT, et al., Appellees.

Court of Appeals of Kentucky.

Nov. 4, 1955.

J. Milton Luker, Roy E. Tooms, Jr., London, for appellants.

William J. Weaver, ·Calvert C. Little, London, for appellees.

SIMS, Judge.

This action was brought in 1950 and practiced under the Civil Code of Practice. The parties will be referred to as plaintiffs and defendants. It sought the cancelation of a deed plaintiffs, Ollie Gabbard and her husband, executed to defendants, Pleas Truett and wife, conveying them a farm in Jackson County of 39 acres in consideration of the latter furnishing John Davis, an afflicted brother of Mrs. Gabbard, with a home, board, clothes and medical care for life. A lien was retained on the land to secure this service. The suit also sought the cancelation of a deed John executed defendants (for the same consideration) wherein he conveyed them his interest in this land, which was a life estate.

The petition averred a failure of consideration in that after four and a half years defendants failed and refused to care for John. The answer denied a failure of consideration but averred John became unmanageable after four and a half years, and by way of counter-claim sought to recover $3,580 for the time they kept John and $3,240, the amount the farm was improved by expenditures upon their part.

The chancellor canceled both deeds and gave judgment in favor of defendants for $1,642.50, which represented one dollar per day for the time they kept John, and adjudged them a lien on the farm in that sum, but allowed them nothing for improvements they put on the place on the theory the use of the farm offset the improvements. Defendants had mortgaged the farm for $1,000 to a bank (which mortgage we held in Gabbard v. Truett, Ky., 248 S.W.2d 711, was subject to the grantors' lien), and the chancellor adjudged the bank a lien for the $1,000 on the $1,642.50 allowed defendants. The land was adjudged to be indivisible without impairing its value and was ordered sold as a whole to satisfy defendants' lien. All costs in the case were adjudged to be paid out of the proceeds of the sale of the land.

On the appeal, as well as the cross-appeal, the cancelation of the deeds is not questioned. But plaintiffs insist the chancellor erred in allowing defendants any sum for the care and support of John, contending the work he did on the farm compensated defendants for that. Also, plaintiffs insist the cost should not have been taxed against the proceeds of the sale, but against defendants. On their cross-appeal defendants contend they should have been compensated in the sum of $3,240 for improvements they placed on the farm and in the sum of $3,580 for the care and support of John.

As is not unusual in such cases, a large amount of proof was taken by depositions, much of which is highly conflicting. A review of the evidence would extend this opinion to great length without serving any useful purpose, therefore we will be content to state what the proof shows rather than attempt to detail it.

John was 47 years of age when the proof was taken. He had the mind of a 12-year-old child, was hard of hearing and had a skin cancer. Physically, he was strong and could use a hoe, mattock, shovel and axe. He could harness a team, saddle a horse and feed animals, if shown how much to give them. John could plow, hoe corn and tobacco, clean fence rows, chop wood and do simple farm work. He was a brother of plaintiff, Mrs. Gabbard, and an uncle of defendant, Mrs. Truett, and had lived in the latter's home on this farm for a few months before she and her husband made the contract to support and care for him. He had a complex which caused him to make sexual advances to young girls and had to be watched to prevent this.

Everything fared well until John went berserk one Sunday in July 1950, when he grabbed at defendants' 13-year-old daughter in the kitchen. She screamed for her father and John ran. That night he returned home and was making a hole in the wall so he could watch this girl, and Mrs. Truett went in to quiet him. He told her he was going to have sexual intercourse with the child, expressing himself in an obscene term and came at Mrs. Truett with an opened knife. Her grown son and husband intervened and subdued John but not until he had broken a mirror over the son's head. Defendants had John arrested and after he stayed in jail several days he was turned over to a sister, Mrs. Mae Angel, who took John out of the State, as she and Mrs. Gabbard did not want him committed to an institution. At the time of taking depositions John was living in Mrs. Gabbard's home.

After this occurrence, defendants notified Mrs. Gabbard they would keep John no longer, and soon thereafter defendants moved from the farm, but refused to deed the property back to Mrs. Gabbard.

It is insisted by plaintiffs that defendants breached their contract in failing to support John for life, therefore upon the cancelation of the deeds, cannot recover for maintaining him for four and a half years or for improvements they put on the farm, citing such cases as Daniels v. France, 168 Ky. 749, 182 S.W. 919; Farley v. Stacey, 177 Ky. 109, 197 S.W. 636, 1 A.L.R. 1181; Alvey v. Alvey, 97 S.W. 1106, 30 Ky.Law Rep. 234, and perhaps others. These authorities do hold that one who abandons a contract without cause cannot recover for services when the deed is canceled for failure of consideration. But they do not hold that one failing to maintain a dangerous lunatic in his home and exposing a 13-year old daughter to the peril of rape and a wife to the peril of murder, cannot recover for services and improvements when the person for whose benefit the contract was made went berserk.

■ Ordinarily, in canceling a contract a court of equity applies the ancient maxim, "He who seeks equity must do equity," and requires the party obtaining cancelation to restore to the other party the benefits received. 9 Am.Jur. "Cancelation of Instruments" § 39, p. 384, 12 Am.Jur. "Contracts" § 451, p. 1031. We have held that where a conveyance is made in consideration of support which the grantee cannot perform and the deed is canceled for that reason, the cancelation must be made upon equitable terms. Luster v. Whitlock, 203 Ky. 405, 262 S.W. 572; Maddox v. Maddox, 135 Ky. 403, 122 S.W. 201. Plaintiffs argue that Mrs. Truett had known John practically all of his life and had him in her home for some months before making the contract for his support and should not now be heard to say that he was unmanageable. The answer to that argument is that while Mrs. Truett did know John was troublesome, she did not realize he would become violent and dangerous to her and her daughter.

■ The chancellor did not err in holding defendants should be compensated for the keep and care of John for four and a half years as well as for the reasonable sum the farm was enhanced by their expenditures for improvements they put on it. The reasonable compensation for the care and support of John was two dollars per day, credited by the value of John's labor on the farm of one dollar per day, hence the sum of $1,642.50 the chancellor allowed defendants on this item is fair and reasonable.

■ The stipulation in the record shows defendants remodeled the dwelling and erected certain outbuildings, which defendants testified cost them some $1,500, and improved the farm in the sum of $2,000. These improvements the chancellor offset against the use of the farm by defendants for four and a half years. There was testimony to the effect the farm was worth $6,000 or $7,000 and its reasonable rental value during the time defendants occupied it was from $300 to $500 a year. Also, there is testimony to the effect defendants sold between $300 and $400 worth of timber off the farm. Therefore, the chancellor did not err in offsetting the improvements defendants put on the farm against its rental value for four and a half years, together with the timber they sold off it.

■■ Nor did the chancellor err in adjudging the cost of this action should come out of the sale of the land. A court of equity has discretion in awarding costs which this court is not disposed to disturb unless that discretion is abused. Chenault v. Southern Trust Co., 245 Ky. 305, 53 S.W. 2d 369; Maryland Casualty Co. v. Lewis, 276 Ky. 263, 124 S.W.2d 48. The chancellor canceled the two deeds, about which neither party complains, and then gave defendants a lien on the land to secure the amount awarded them by way of restitution and ordered a sale of the land as being indivisible. In such circumstances it was not an abuse of discretion to adjudge the cost of the action should come out of the sale of the land.

■ Plaintiffs argue the chancellor erred in ordering the sale of the entire farm when the record shows Mae Angel, who was not a party to the deed which was set aside, owned a ⅕ undivided remainder interest in the farm, and John owned a life estate therein. Mrs. Angel was before the court by warning order and has not appealed from the judgment. John was represented by a guardian ad litem, who has not appealed. Insofar as the judgment directs a sale of the interest of Mrs. Angel and of John's life estate in this land, it appears to be erroneous. Mrs. Angel can obtain a new trial under § 414 of the Civil Code of Practice. As we construe the judgment the chancellor did not intend John's life estate in this land should be sold as it set aside the deed John had executed to defendants. While the question is not before us as to Mrs. Angel's interest, we suggest to counsel that the judgment be modified by agreement and her ⅕ undivided remainder interest be not sold. Also, the chancellor should make it clear that John's life estate in the land should not be sold. By so doing all parties will be saved the cost and annoyance of further litigation which will benefit no one.

The judgment is affirmed on the appeal and on the cross-appeal.